UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. REECE,<br>       Petitioner,<br>    v.<br>RON DAVIS,<br>       Respondent. | Case No. 17-cv-01908-SI<br><br>**ORDER OF DISMISSAL**<br>Re: Dkt. Nos. 1, 2 |

Charles Reece, an inmate at San Quentin State Prison, filed this *pro se* action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the court for review pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

**BACKGROUND**

Charles Reece was convicted in Los Angeles County Superior Court in 1985 of kidnapping for the purpose of robbery and multiple counts of robbery. He was sentenced to a term of life imprisonment plus six years. (Docket No. 1-7 at 55 (Los Angeles County Superior Court order dated May 16, 2016).)

On August 13, 2015, the Board of Parole Hearings (BPH) held a parole suitability hearing, found Reece unsuitable for parole, and set his next parole hearing in three years. (*Id.*) In this action, Reece challenges that August 13, 2015 decision of the BPH. He filed several unsuccessful state habeas petitions before filing his federal petition for writ of habeas corpus.

**DISCUSSION**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

A. <u>State Law Claims</u>

Most of the fourteen claims alleged in Reece's petition for writ of habeas corpus are for state law errors and cannot proceed. The state law claims are that the BPH's recommendations are vague and were made before the hearing occurred (Claim 1); "minimizing" is not part of the state regulation on parole suitability (Claim 2); the state parole regulation did not allow the BPH to rely on lack of insight, minimizing and not taking responsibility (Claim 3); the BPH violated the *In re. Butler* settlement (Claim 6); the BPH violated the *In re. Lugo* settlement (Claim 7); the BPH violated the "60 and older ruling by adopting the error-filled psych reports" (Claim 9); the BPH violated California Penal Code § 5011(b) and section 2236 of Title 15 of the California Code of Regulations (Claim 11); and the BPH "failed to make the required nexus" (Claim 14). (Docket No. 1 at 5-7.)

A "federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citations omitted). Federal habeas relief is not available for state law errors. *See id.*

Claims 1, 2, 3, 6, 7, 9, 11, and 14 are dismissed because they are for state law errors. With regard to Claims 6 and 7, Reece alleges that the BPH violated state court settlement agreements in

*In re. Butler* and *In re. Lugo*.[1] These state court settlement agreements might create state law rights, but cannot support any federal habeas relief because state court settlement agreements are not "'the Constitution or laws or treaties of the United States.'" *See Cooke*, 562 U.S. at 219; *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Like the other claims, Claims 6 and 7 are for state law errors.

B. <u>Due Process Claims</u>

In Claims 5, 12, and 13, Reece alleges that the BPH's errors violated his right to due process. He alleges in Claim 5 that the BPH "violated his due process right by claiming he 'maintained his innocen[ce] when he did not attend the hearing [and] informed his attorney three times not to discuss the offense." (Docket No. 1 at 6.) In Claim 12, he alleges that the BPH violated his right to due process by "knowingly us[ing] two psych reports that [were] filled with errors, disregard[ing] Petitioner[']s rebuttals." (*Id.* at 7.) In Claim 13, he alleges that the BPH violated his right to due process by failing to discuss section 2402(c) and (d) of title 15 of the California Code of Regulations, "as the law say they shall before denying or granting parole." (Docket No. 1 at 7.)

For purposes of federal habeas review, a California prisoner is entitled to only "minimal" procedural protections in connection with a parole suitability determination. The procedural protections to which the prisoner is entitled under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution are limited to an opportunity to be heard and a statement of the reasons why parole was denied. *See Cooke*, 562 U.S. at 220-21. "Because the only federal right at issue is procedural, the relevant inquiry is what process [the prisoner] received, not whether the state court decided the case correctly." *Id.* at 222. The Court explained that no Supreme Court case "supports converting California's 'some evidence' rule into a substantive federal requirement," *id.* at 220, and the Ninth Circuit erred in holding otherwise.

---

[1] According to Reece, the *Butler* settlement requires the BPH to set a base term and adjusted base term at the parole hearing, and the *Lugo* settlement requires documents to be delivered to parole applicants at least 60 days before the parole hearing. (Docket No. 1 at 34, 36.)

3

1  Here, the record demonstrates that Reece was provided the two procedural protections required to satisfy his federal due process rights. Reece had an opportunity to be heard at his parole hearing. Although afforded the opportunity to be heard, Reece chose not to attend that hearing due to medical issues, although his attorney attended it (at Reece's request) so the hearing could go forward without Reece being present. (Docket No. 1 at 15; Docket No. 1-8 at 4.) The BPH provided a statement of reasons for its decision to find Reece not suitable for parole. (Docket No. 1-8 at 15-18.)[2] Reece's due process claims must be dismissed because he received the only two procedural protections required as a matter of federal due process.

C.  Ex Post Facto Claims

Claims 4 and 8 allege violations of Reece's constitutional right to be free of ex post facto laws. In Claim 4, Reece contends that the BPH's "use of Marsy's Law to deny Petitioner parole for three years violated his ex post facto right because Marsy's Law" was not part of the regulations in effect at the time of his crime and because Marsy's Law does not apply to non-murderers. (Docket No. 1 at 6.) In Claim 8, Reece alleges that the BPH's "use of insight, taking responsibility, [and] minimizing . . . violated Petitioner['s] ex post facto rights because those criteria were not part" of the California regulations in effect at the time of his crime. (Docket No. 1 at 6.) His ex post facto claims require the court to answer three questions: Does Marsy's Law apply to parole applicants other than those convicted of murder? Does Marsy's Law change the substantive criteria for parole? Do the lengthier delays between parole consideration hearings allowed by Marsy's Law violate the Ex Post Facto Clause? A more detailed analysis follows, but the short answers to these three questions are: yes, no, and it cannot be determined in a habeas action.

---

[2] The BPH transcript for the August 13, 2015 hearing contains only the odd-numbered pages. (Docket No. 1-8 at 2-18.) There is no need for Reece to present a complete copy of the transcript, however, because it would not affect the analysis of his federal due process claims. There is enough information in the record for this court to determine that Reece did receive the minimal procedural protections required after *Cooke*, i.e., an opportunity to be heard and a statement of reasons for the decision.

4

Article I, section 10 of the United States Constitution prohibits the States from passing any ex post facto law. "To fall within the ex post facto prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted). Some retroactive changes in parole laws may violate the Ex Post Facto Clause, but "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." *Garner v. Jones*, 529 U.S. 244, 250 (2000). The critical inquiry in examining a change to a parole law is "whether retroactive application of the change . . . create[s] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). Speculative and attenuated risks of prolonging incarceration do not establish a violation of the Ex Post Facto Clause. *Morales*, 514 U.S. at 509.

1. Marsy's Law Applies To Kidnappers As Well As Murderers

In 2008, the California voters approved Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which modified the availability and frequency of parole hearings. *See* Initiative Measure (Prop. 9), approved Nov. 4, 2008, eff. Nov. 5, 2008. As amended by Marsy's Law, California Penal Code § 3041.5 now provides that the BPH will hear each case every 15 years unless it opts to schedule the next hearing in three, five, seven or ten years. The most significant changes resulting from the amendments pursuant to Marsy's Law are that the minimum deferral period is increased from one year to three years, the maximum deferral period is increased from five years to fifteen years, and the default deferral period is changed from one year to fifteen years. *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1105 (9th Cir.2011). Marsy's Law also amended the law governing parole deferral periods by authorizing the BPH to advance a hearing date. The BPH "may exercise its discretion to hold an advance hearing sua sponte or at the request of a prisoner." *Id.*

Reece contends that Marsy's Law does not apply to him because he was convicted of kidnapping for the purpose of robbery, rather than murder. Reece's contention that Marsy's Law does not apply to non-murderers is incorrect, as this court explained when it rejected the claim the last time Reece asserted it.

> Proposition 9 was not textually limited to murderers, and the statutory amendment to California Penal Code § 3041.5 that resulted from Proposition 9 was not limited to murderers. Indeed, it was in a case brought by a prisoner serving an indeterminate life term on a kidnapping conviction that the California Supreme Court found that Proposition 9 did not violate prisoners' ex post facto rights. *See In re. Vicks*, 56 Cal. 4th 274, 284 (Cal. 2013) (upholding application of Marsy's law to kidnapper). Reece urges that, since the "Purposes and Intent" section of Proposition 9 mentioned murderers, it implicitly excluded all other criminals. See Docket # 1-1 at 10-11. This argument fails because even the "Statement of Purposes and Intent" section was broader than just murderers: although it did state that the purpose of the initiative was to limit the frequency of parole hearings for murderers, it also stated that its purpose was to "[p]rovide victims with rights to justice and due process," which expands its reach beyond killers. See Cal. Proposition 9 (2008) (available in Westlaw's Ca-Legis-Old database). Proposition 9 explicitly amended California Penal Code § 3041.5 to lengthen the default parole periods for all prisoners to whom that section applied, not just for murderers. Section 3041.5 applied to kidnappers like Reece before and after the amendments caused by Proposition 9. Reece's claim that the application of Proposition 9 and California Penal Code § 3041.5, as amended, to a kidnapper like him, violated his right to substantive due process is dismissed without leave to amend.

*See Reece v. Swarthout*, Case No. 13-cv-2515 SI, Docket No. 9 (Nov. 4, 2013 Order Denying Motion To Dismiss And Staying Action) at 5-6.

Although Reece presented a substantive due process claim in the 2013 case, the court's reasoning in the 2013 case applies equally to his current claim which is labeled as one for both an ex post facto violation and a substantive due process violation. Whether the Marsy's-Law-doesn't-apply claim is cast as one for a due process violation or for a violation of his rights under the Ex Post Facto Clause, the claim fails because it rests on a premise (i.e., that Marsy's Law does not apply to him) that is wrong.

### 2. Marsy's Law Did Not Change The Substantive Criteria For Parole Suitability

Reece urges that the BPH violated his right to be free of ex post facto laws because the BPH is using "insight, taking responsibility, [and] minimizing" as criteria for parole suitability now, even though (in his view) those criteria were not part of the regulation in effect when he

committed the kidnapping. (Docket No. 1 at 6.)

Reece does not show that the regulations or statutes containing the criteria for parole have been changed to his detriment as a result of the passage of Marsy's Law. No relevant portion of the regulation listing the circumstances that tend to show suitability for parole and unsuitability for parole has changed since he committed his crime. *See* Cal. Code Regs. tit. 15, § 2281.[3] The regulation is so very general that it has, since the time of his crime, allowed the use of the factors Reece urges are impermissible, i.e., whether he has insight, takes responsibility and minimizes the crime or his responsibility for it. *See id.* § 2281(b) ("*All relevant, reliable information available to the panel shall be considered* in determining suitability for parole. Such information shall include the circumstances of the prisoner's: social history; *past and present mental state*; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; *past and present attitude toward the crime;* any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; *and any other information which bears on the prisoner's suitability for release.*") (emphasis added). The California Supreme Court has determined that the changes brought about by Marsy's Law did not substantively change parole for existing prisoners: Marsy's Law did "not alter the calculation of the sentence, the calculation of credits, the criteria relevant to the determination of suitability for parole, or the criteria relevant to the determination of the parole date once a prisoner is found suitable for parole." *In re Vicks*, 56 Cal. 4th 274, 307 (Cal. 2013). The California Supreme Court's interpretation of California law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). (Although bound by these determinations of what state law was, this court would not be bound by a state courts' determination of whether Marsy's Law violated the federal constitution's Ex Post Facto Clause.) Reece's claim must be dismissed

---

[3] Reece committed the kidnapping in about 1984. The only amendment to the regulation since then occurred in 2001. The 2001 amendment concerns the use of battered woman syndrome as a factor in determining suitability for parole. *See* Cal. Code Regs. tit. 15, § 2281 (history notes).

1  because he does not show that there was a change in the substantive criteria for parole in Marsy's
2  Law that disadvantaged him.

### 3. The Increased Time Between Parole Hearings Cannot Be Challenged In Habeas

Reece contends that the increased length of the period between parole suitability hearings violates his rights to be free of ex post facto laws. He is correct that Marsy's Law has increased the intervals between parole hearings: a prisoner now might have to wait up to 15 years between hearings, although Reece's next hearing is scheduled to occur three years after his last one.[4] However, the ex post facto claim about that change must be brought in a civil rights action rather than a habeas action.

In *Nettles v. Grounds*, 830 F.3d 922, 934-35 (9th Cir. 2016), *cert. denied* 137 S. Ct. 645 (2017), the Ninth Circuit held that that a prisoner's claim which, if successful, will not necessarily lead to immediate or speedier release from custody falls outside the "core of habeas corpus" and must be pursued (if at all) in a civil rights action under 42 U.S.C. § 1983, rather than in a habeas action. *Nettles*, 830 F.3d at 927-28. The Ninth Circuit recently applied *Nettles* to ex post facto claims like that asserted by Reece and determined that they could not be pursued in a habeas petition. The Ninth Circuit concluded in several unpublished opinions that habeas jurisdiction did not exist for ex post facto challenges to the lengthening of the intervals between parole hearings caused by Marsy's Law, and dismissed the habeas appeals without prejudice to the appellants pursuing the claims in properly filed civil rights actions under 42 U.S.C. § 1983. *See Byrd v. Arnold*, 2017 WL 1032629, *1 (9th Cir. Mar. 17, 2017) (certificate of appealability vacated as

---

[4] Under current California law, an inmate found unsuitable for parole will not have another regularly scheduled parole suitability hearing until another 3-15 years later. *See* Cal. Penal Code § 3041.5(b)(3). When parole is denied, the BPH panel will inform the inmate the number of years he must wait until his next regularly-scheduled parole hearing date. An inmate may request that the BPH advance the date of his next parole hearing. "To do so, an inmate submits a petition to advance ('PTA') setting forth 'the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration of the inmate.' Cal. Penal Code § 3041.5(d)(1). The Board has sole discretion to grant or deny a PTA; it may also advance an inmate's next parole hearing sua sponte. *Id.* § 3041.5(b)(4), (d)(2)." *Gilman v. Brown*, 814 F.3d 1007, 1010-11 (9th Cir. 2016).

improvidently granted and appeal dismissed in reliance on *Nettles* holding); *Free v. Swarthout*, 2017 WL 1031356 (9th Cir. Mar. 17, 2017) (same); *Carter v. Davis*, 2017 WL 1032630 (9th Cir. Mar. 17, 2017) (same); *see also Borstad v. Hartley*, 668 F. App'x 696, 697 (9th Cir. 2016) (success on petitioners' claims that the lengthening of intervals between parole hearings caused by Marsy's Law violated their rights under Ex Post Facto Clause "would not necessarily result in a shortening of their sentences. Thus, the district court in each case lacked jurisdiction to grant 28 U.S.C. § 2254 habeas relief. *Nettles*, 830 F.3d at 935–37.").

Success on Reece's claim will not necessarily lead to immediate or speedier release from custody and therefore falls outside the core of habeas corpus. If he prevails on his claim that the lengthening of the intervals between parole hearings caused by Marsy's Law violates the Ex Post Facto Clause, it does not necessarily follow that he will be released from prison on a date sooner than otherwise would occur. If the longer intervals violated the Ex Post Facto Clause, the remedy violation would be a new hearing on the old schedule for parole hearings rather than an outright release from prison. Whether his next hearing is held in 1, 3 or 15 years, Reece must be found suitable for parole before his parole date will be set. Under *Nettles*, Reece's only potential recourse in federal court is to file a § 1983 complaint because his claim falls outside the core of habeas corpus.

In an appropriate case, a habeas petition may be construed as a civil rights complaint under 42 U.S.C. § 1983. *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971); *see Nettles*, 830 F.3d at 935-36. Although the court may construe a habeas petition as a civil rights complaint, it is not required to do so. Since the time when *Wilwording* was decided there have been significant changes in the law. For example, the filing fee for a habeas petition is five dollars; for civil rights cases, the fee is now $400 (with $50 of that fee reduced if the prisoner is allowed to proceed *in forma pauperis*). A prisoner is now required to pay the fee, even if granted *in forma pauperis* status, by way of deductions from income to the prisoner's trust account. *See* 28 U.S.C. § 1915(b). A prisoner who might be willing to file a habeas petition for which he would not have to pay a filing fee might feel otherwise about a civil rights complaint for which the $350 fee would be deducted from income to his prisoner trust account. Also, a civil rights complaint that is

9

dismissed as malicious, frivolous, or for failure to state a claim counts as a "strike" under 28 U.S.C. § 1915(g), which is not true for habeas cases. Further, Reece's petition is not amenable to conversion because it does not name the proper defendant. *See Nettles*, 830 F.3d at 936 (quoting *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005)) (in order to be converted, petition must be "'amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief.'")

Reece's claim that Marsy's Law violates his rights under the Ex Post Facto Clause by lengthening the interval between his parole hearings is dismissed without prejudice to Reece pursuing it in a civil rights action. Although the Ex Post Facto claim *could* be pursued in a civil rights action, the court is not suggesting such an action *would* be successful. Reece is strongly encouraged to read the decision in *Gilman v. Brown*, 814 F.3d 1007, before filing any § 1983 action because that case signals an uphill battle for Reece on this ex post facto claim. *See Gilman*, 814 F.3d at 1016 (class action plaintiffs failed to show default time between parole hearings violated Ex Post Facto Clause).

D.     Fifth Amendment Claim

In Claim 10, Reece alleges that the BPH violated his Fifth Amendment right to remain silent at his parole hearing.[5] The claim is not well-articulated, but appears to be a generalized grievance that, if an inmate does not confess to the crime or say things the BPH wants to hear, the Board will deny him parole.

No person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This provision extends not only to criminal proceedings, but to any proceeding in which the answers might incriminate the individual in a future criminal proceeding. *Allen v.*

---

[5] Reece also urges in this claim that the BPH violated state law provisions against making a parole applicant admit his guilt, and that as a result of California Penal Code § 5011(b) and section 2236 of Title 15 of the California Code of Regulations, the "state Legislature extended to life prisoners the Fifth Amendment protection." (Docket No. 1 at 40-41.) As discussed earlier in this order, these state law error claims cannot support federal habeas relief. *See Cooke*, 562 U.S. at 219.

*Illinois*, 478 U.S. 364, 368 (1986).

Reece has not alleged any facts suggesting a genuine risk of incriminating himself in a future criminal proceeding by answering questions about the crimes for which he already was convicted. Because Reece "has already been convicted" of kidnapping and robbery, "[d]ouble jeopardy considerations would preclude any admission by [petitioner] regarding [those crimes] from being used against him." *Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir.1997) (rejecting Fifth Amendment self-incrimination challenge to inmate sex offender treatment program that compelled inmate to admit guilt of sexual offenses of which he already had been convicted); *see also Houff v. Blackletter*, 2009 WL 2486375, at *3 (D. Or. 2009), *affirmed,* 433 F.App'x 590 (9th Cir. 2011), *cert. denied*, 565 U.S. 1169 (2012) (citations omitted) ("The purpose of the Fifth Amendment is 'to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime.' Here, Petitioner objected to a psychological evaluation [required for a parole determination hearing] in which information was sought regarding past crimes for which Petitioner had already been convicted. The protections of the Fifth Amendment do not apply.")

Moreover, "the Fifth Amendment proscribes only self-incrimination obtained by a 'genuine compulsion of testimony.' Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *United States v. Washington*, 431 U.S. 181, 187 (1977). The pressure to speak that a parole applicant might feel internally to better his chances at obtaining parole does not violate his Fifth Amendment rights. *Cf. Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 287–88 (1998) (State clemency procedure that allowed inmate the option of voluntarily participating in an interview before the clemency hearing may have confronted him with a difficult choice because his statements would not be not confidential or immunized, but did not violate inmate's Fifth Amendment right not to incriminate himself; "this pressure to speak in the hope of improving his chance of being granted clemency does not make the interview compelled"). Reece does not allege facts suggesting genuine compulsion of testimony by the State; his realization that he might improve his parole chances if he spoke does not amount to a showing that there was genuine compulsion of

11

testimony. The petition fails to state a claim for a Fifth Amendment violation.

E. No Certificate of Appealability

A certificate of appealability will not issue because Reece has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DISMISSED. Leave to amend is not granted because the defects in the several claims are not curable by amendment.

Reece's *in forma pauperis* application is GRANTED. (Docket No. 2.)

The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: June 14, 2017

_____
SUSAN ILLSTON
United States District Judge